IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THADDEUS L. JARVIS                                                    PLAINTIFF

v.                                                          No. 4:20CV193-NBB-JMV

COMMISSIONER PELICIA HALL, ET AL.                                   DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Thaddeus L. Jarvis, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants placed him in a facility with unconstitutionally harsh conditions of confinement and that a single guard (or law enforcement officer) used excessive force against him. The defendants have moved for summary judgment; the plaintiff has responded, and the matter is ripe for resolution. For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and judgment will be entered in favor of the defendants.

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### Undisputed Material Facts

The plaintiff alleges that, while temporarily being housed in Unit 32 of the Mississippi State Penitentiary ("M.S.P."), between the dates of January 2, 2020, and January 9, 2020, the conditions of his confinement were unconstitutionally harsh, violating the Eighth Amendment prohibition against cruel and unusual punishment. See Plaintiff's Complaint [Doc. 1] at 4-5, 10. He was moved to Unit 32 from Unit 29 at 5:31 p.m. on January 3, 2020. See Housing Location Excerpt from Plaintiff's Institutional Records, Motion Exhibit "B." [1] He was then transferred to the Tallahatchie County Correctional Facility on January 9, 2020, at 11:26 a.m. *Id.* He also alleges that during that time, specifically on January 5, 2020, that an unidentified Mississippi State Trooper or member of the Mississippi State Penitentiary Emergency Response Team or member of the Mississippi Special Response Team – or someone else – used excessive force against him. Plaintiff's Complaint [Doc. 1] at 4, 11, 22.1.

Mr. Jarvis claims that on January 2, 2020, two rival gangs housed Unit 29 at the Mississippi State Penitentiary in Parchman, Mississippi ("M.S.P.") started a "bang" war, leading to the deaths of other inmates. *Id*. at 4, 12. He claims that the events were dangerous and that – because he was not affiliated with one of the gangs – it was likely he would be harmed. *Id*. at 12.

He claims that, during the gang war, he and other prisoners were moved to M.S.P. Unit 32 on January 2, 2020, where they remained until January 9, 2020. *Id*. at 10.2 He claims that during the

---

[1] The exhibits referenced in this memorandum opinion may be found attached to the defendants' Motion for Summary Judgment.

seven days he remained in Unit 32, he was denied food, water, clothing, personal hygiene items, bedding, sheets, and a jacket. *Id*. at 4. He claims that during those seven days, he was denied meals that provided him with at least 2,900 calories. *Id*. at 10. He claims that he was not able to shower during those seven days and that the toilets did not flush properly. *Id*.

Mr. Jarvis also filed a grievance with the Administrative Remedy Program in which he provided more details about these conditions. The allegations in his grievance contradict several of the allegations made in his Complaint. See ARP Grievance, MSP-20-102, Motion Exhibit "A." For instance, in the grievance, Mr. Jarvis stated that by January 6, he had received toiletries. See Motion Exhibit "A" at MDOC-JARVIS-000008. He also stated that by January 6, 2020, he had received "sleeping material." *Id*.

In the grievance, Mr. Jarvis stated that on January 3, 2020, he received one meal. *Id*. at MDOC-JARVIS-000003. On January 4, 2020, he received two meals. From January 5, 2020, until January 9, 2020, he received three meals per day. *Id*. Finally, Mr. Jarvis also stated in the grievance that he received many bottles of water during his temporary stay in Unit 32. *Id*.

Mr. Jarvis also claims that on January 5, 2020, at least fifty cars filled with Mississippi State Troopers and M.S.P. Emergency Response Team members showed up to gain control of the facility. *Id*. at 11, 22. He claims that they used excessive force by binding his hands behind his back with restraints, causing scrapes on his back and a chipped canine tooth. *Id*.

### Effect of the Gang War

All of the plaintiff's claims in this case must be viewed in light of the ongoing gang war taking place in Unit 29. According to the plaintiff's complaint, he was worried that, as a non-gang-member, he might be the victim of the violence sweeping through the prison. The gang war escalated to the

- 4 -

point that, according to the plaintiff, outside law enforcement officers arrived in over fifty cars to quell the violence and restore order to the facility.

### General Conditions of Confinement

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To show that prison officials violated the Eighth Amendment, the plaintiff must prove that the official was deliberately indifferent to a substantial risk of serious harm to the inmate. *Id.* Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837. To show that prison officials violated the Eighth Amendment, a plaintiff must establish that the official was deliberately indifferent to a substantial risk of serious harm. *Id.* Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837. "To the extent [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[T]he Constitution does not mandate comfortable prisons, and prisons…cannot be free of discomfort." *Id*. at 349. Only

- 5 -

those conditions which are "inhuman and barbaric" and deny an inmate of "the minimal measure of life's necessities" violate the Eighth Amendment. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999).

**Lack of Showers for Seven Days**

Mr. Jarvis claims that his inability to shower for seven days while in Unit 32 violated his Eighth Amendment rights. [Doc. 1] at 10. "[A] temporary deprivation of the opportunity to shower does not violate the Eighth Amendment." *Fernandez v. Armstrong*, No. 3:02-CV-2252-CFD, 2005 WL 733664, at *6 (D. Conn. Mar. 30, 2005) (listing cases involving deprivations from five days to two weeks). Denying showers for a three-day period violates no constitutional right. *See Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996). Even a prison policy "limiting inmates to weekly showers does not violate the Eighth Amendment." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Temporary denial of showers for seven days does "not amount to a denial of life's basic necessities," and must be dismissed. *See Howard v. Guterrez*, No. CA C-11-125, 2011 WL 2223768, at *6 (S.D. Tex. June 7, 2011); *Fernandez*, 2005 WL 733664, at *6 (granting summary judgment on a claim based on an inability to "shower for approximately five days"). The plaintiff has not shown that any of the defendants were deliberately indifferent to a substantial risk of harm for denying him a shower for seven days.

**Plumbing Problems and Personal Hygiene Items**

Allegations about dirty conditions or faulty plumbing at the prison do not to establish constitutional a violation. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (no constitutional injury when plaintiff was confined in "filthy" cell) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at

*9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing *Talib v. Gilley*, 138 F.3d. 211, 215 (5th Cir. 1998) at 215); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, fifty-two inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional."). In this case, the plumbing problems were limited to the seven days Mr. Jarvis was confined to Unit 32. In addition, in another Administrative Complaint (20-102) filed with the Prison Mr. Jarvis stated that by January 6, 2020, he had received toiletries. *See* Motion Exhibit "A" at Bates Stamped Document MDOC-JARVIS-000003. This claim must be dismissed because the allegations fail to show that the defendants were deliberately indifferent to a substantial risk of harm to the plaintiff, and he has alleged no injury of any kind arising out of the living conditions at Unit 32.

**Food and Water**

The deprivation of food and water constitutes cruel and unusual punishment when it denies inmates the "minimal civilized measure of life's necessities. *Talib v. Gilley*, 138 F.3d. 211, 214 n.3 (5th Cir. 1998), quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct 2321 (1991). The Eighth Amendment requires that an inmate be provided with meals sufficiently nutritious to preserve his health. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986).

In his complaint, Mr. Jarvis alleges that during his stay in Unit 32 he was denied food and water. Doc. [1] at 4. He later clarified that he was actually fed during his brief stay in Unit 32, but was not provided the 2,900 calories per meal that MDOC inmates are supposed to receive. *Id*. at 20. Mr. Jarvis provided more detail in ARP 20-102. *See* Motion Exhibit "A." In this grievance, Mr. Jarvis states that he did not receive a meal on January 2, 2020. *Id*. at MDOC-JARVIS-000003. He

states that on January 3, 2020, he received one meal. *Id*. He then states that on January 4, 2020, he received two meals and that from January 5, 2020, until January 9, 2020, he received three meals per dat. *Id*. This claim is without merit as "[n]o authority—either from the Constitution or federal law—exists . . . requiring that prisoners be afforded a specific caloric intake," particularly when the plaintiff claims no physical harm or adverse physical effects. *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999); *see also Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986). Mr. Jarvis admits that by his third day in Unit 32 lockdown, he began to receive three meals a day. These claims of temporarily receiving less than three meals per day simply do not amount to an Eighth Amendment violation.

Likewise, there is no Eighth Amendment violation for his claim that the defendants failed to provide Mr. Jarvis with water, as he alleged in his complaint. Again, in ARP 20-102, Mr. Jarvis stated that he was provided with eight 16-ounce bottles of water during his temporary stay in Unit 32, which he believes was insufficient. See Motion Exhibit "A" at MDOC-JARVIS-000003. Mr. Jarvis does not, however, allege that he suffered dehydration, malnourishment, or any other ill effect related to his water intake while in Unit 32. His allegations involve the adequacy of the water provided him, rather than an inhuman deprivation by the guards in Unit 32. This allegation does not rise to the level of an Eighth Amendment violation and will be dismissed with prejudice.

**Bedding, Mattress, and Cold Temperatures**

Mr. Jarvis alleges that he was not provided a mat, bedding, or jacket while in Unit 32. [Doc. 1] at 4. However, in his ARP 20-102, he stated that the deprivation of "sleeping material" lasted three days, and by January 6, 2020, this was no longer a problem. *See* Motion Exhibit "A" at MDOC-JARVIS-000004. Such a temporary deprivation does not rise to the level of an Eighth Amendment violation. A short-term deprivation of bedding and a mattress is not a condition which would be considered a denial of the minimal measure of life's necessities. In *Novak v. Beto*, 453 F.2d 661, 665-

- 8 -

66, 669, 671 (5th Cir. 1971), the Fifth Circuit found no constitutional violation where the inmates in solitary confinement were given gowns and blankets, but were not provided mattresses or pillows, even during nighttime hours, for up to 15 days. *See Grissom v. Davis*, No. 02–1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); *Conlin v. Thaler*, 347 Fed.Appx 983 (5th Cir. 2009) (Inmate failed to show egregious deprivation of a minimal life necessity where he alleged loss of sleep due to an unsupportive mattress).

The plaintiff's allegations of low temperatures without adequate bedding do not rise to the level of a constitutional violation because he has not alleged any physical injury. *See O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir.1996) (sleeping without mattress or blanket for four days on a concrete slab in a cell located ten feet from an exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); *Seltzer–Bey v. Delo*, 66 F.3d 961, 964 (8th Cir.1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); *Williams v. Delo*, 49 F .3d 442, 445 (8th Cir.1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional); *Alex v. Stadler*, 225 F. App'x 313, 314 (5th Cir. 2007)(unpublished)(prisoner's claims he was held in cold conditions for an extended period with only a paper gown did not give rise to compensatory damages without physical injury); *Young v. McCain*, 760 F. App'x 251, 257–58 (5th Cir. 2019) *citing Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (finding such a denial in light of the inmate's "overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the

- 9 -

total lack of bathroom facilities for forty-nine inmates sharing a small bounded area"); but see *Alex v. Stalder*, 225 Fed Appx. 313 (5th Cir. 2007) (Inmate provided non-frivolous allegation when held in very cold conditions for an extended period in November and December, wearing nothing but a paper gown and ordered to remain on the cold concrete.)

Mr. Jarvis' claim that he was subjected to cold temperatures and lack of bedding for three nights indoors does not rise to the level of a constitutional deprivation. In addition, he has not alleged physical harm of any kind from these conditions. The plaintiff was not moved to Unit 32 as punishment, but as an emergency measure to relocate him and other inmates when a gang war erupted at the Mississippi State Penitentiary. As such, this claim must be dismissed as there is simply no proof of ill intent or deliberate indifference on the part of the guards during his seven-day stay in Unit 32.

Considering the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the instant claims do not rise to the level of a constitutional violation. The plaintiff has not identified any "basic human need" which he was denied for an unreasonable period of time; nor has he shown that any defendant was deliberately indifferent to his health or safety. *See Woods*, 51 F.3d at 581. Indeed, the prison carried out these emergency measures to protect the inmates and guards. These claims must therefore be dismissed.

### Excessive Force

Mr. Jarvis claims that a prison guard or outside law enforcement officer used excessive force against him in violation of the Eighth Amendment prohibition against cruel and unusual punishment. A court must balance the constitutional rights of convicted prisoners with the needs of prison officials to effectively use force to maintain prison order; to establish liability on the part of defendants the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.

- 10 -

Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Factors which are relevant to this issue include, but are not limited to "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Rankin*, 5 F.3d at 107 n.5 (citation omitted).

A prisoner need not prove "significant" or "serious injury" in order to prevail in an Eighth Amendment claim of excessive force. *Hudson*, 503 U.S. at 7. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* A *de minimis* use of force, however, is insufficient to state a cognizable Eighth Amendment claim. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation omitted). Moreover, "[i]n cases post-*Hudson*, 'certainly some injury is still required.'" *Rankin*, 5 F.3d at 108; *see also Knight v. Caldwell*, 970 F.2d 1430 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S. Ct. 1298, 122 L. Ed. 2d 688 (1993). A single incident of force or a single blow is *de minimis* and thus does not violate the Eighth Amendment. *Jackson v. Colbertson*, 984 F. 2d 699, 700 (5th Cir. 1993).

Mr. Jarvis alleges one instance of excessive force. [Doc. 1] at 11. He claims that he was cuffed with his hands behind his back, leading to a bruised back and side as well as a chipped canine tooth. *Id*. He provided no details about the incident in his complaint; however, it appears that the

event occurred when an unidentified man restrained him and forced him into the ground. *See* Motion Exhibit "A" at MDOC-JARVIS-000008.

### The need for the application of force

Mr. Jarvis does not identify the specific reason he was handcuffed and put on the ground; however, the force was applied during an active, dangerous gang war in which inmates were killed and where he anticipated harm because he was not affiliated with either gang. [Doc. 1] at 12. He notes that the war was so out of control that 50 cars filled with Mississippi Highway Patrolmen and M.S.P. Emergency Response Team members arrived at the facility to quell the violence and reestablish order. *Id.* at 11. The guards placed him and the other inmates in handcuffs and forced them to the ground to regain control of the Unit; the use of this amount of force was necessary and reasonable under the circumstances.

### The relationship between that need and the amount of force used

Parchman was in the middle of a gang war; as such, it was reasonable to place Mr. Jarvis and the other inmates in handcuffs and on the ground while authorities regained control of the prison. It was certainly neither repugnant to the conscience of mankind nor cruel. Instead, the use of restraints in this situation is commonplace. The use of handcuffs or other restraining devices is rational security measure, not cruel and unusual punishment – unless great discomfort is deliberately or mindlessly inflicted. *Jackson v. Cain*, 864 F.2d 1245 (5th Cir. 1989) (citing *Fulford v. King*, 692 F 2d 11, 14-15 (5th Cir. 1982); *see also McCreary v. Massey*, 366 Fed. Appx 516 (5th Cir. 2010)(handcuffing prisoner's arms behind back and causing his shoulder to dislocate because of pre-existing condition did not amount to deliberate indifference, though he was wearing a sling). Mr. Jarvis has not shown that the force used was disproportional to the reason it was applied.

**The threat reasonably perceived by the responsible officials**

As with the previous two factors, the prison gang war Mr. Jarvis described in his complaint

informs the court's decision. The prison-wide gang war constituted a substantial threat to both

inmates and guards, a fact Mr. Jarvis noted in his initial failure-to-protect claim – stating that he would

likely have been attacked while in Unit 29. [Doc. 1] at 12.

In this case, Mr. Jarvis has not identified the man who handcuffed him and placed him on the

ground. He claims:

> [O]n January 5, 2020 Mississippi State Troopers along with the M.S.P. Emergency
> Response Team used excessive force towards me for no reason causing my back to be
> injured and having back pain. Had x-rays and exams and blood work.

[Doc. 1] at 22. In his ARP grievance Mr. Jarvis states:

> Mississippi State Troopers also M.S.P. S.R.T. plus E.R.T. team came in Unit 32 over
> 50 cars used excessive force towards me with my hands bound behind my back with
> restraints, injuring my body, scaring my back and aide and top right K-9 teeth was
> chipped . . . .

[Doc. 1] at 11.

Mr. Jarvis has not identified the person responsible for the alleged use of excessive force.

Based on his statements, it could have been a Member of the Mississippi State Troopers, a Member of

the M.S.P. Special Response Team, or someone else; he does not know. To show deliberate

indifference, the plaintiff must prove that the person responsible for the claim had a "sufficiently

culpable state of mind." As he does not know who cuffed him and put him on the ground, his

allegation of excessive force must be dismissed with prejudice. In addition, as discussed above, even

if Mr. Jarvis could identify the person who cuffed him and forced him to the ground, his allegations

failure to state a claim upon which relief could be granted. Mr. Jarvis' excessive force fails for that

reason, as will.

- 13 -

**Conclusion**

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and judgment for the defendants will be entered in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 10th day of January, 2022.

                                        /s/ Neal Biggers
                                        NEAL B. BIGGERS
                                        SENIOR U. S. DISTRICT JUDGE